UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION


KENNETH A. DURKEE,

                    Petitioner,

v.                                    Case No. 5:09-cv-379-Oc-32PRL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,
                    Respondents.
_____

## ORDER

### I. Status

Petitioner Kenneth A. Durkee initiated this action by filing a pro se Petition for Writ of Habeas Corpus (Doc. #1) pursuant to 28 U.S.C. § 2254 on August 28, 2009. Durkee challenges a 2006 state court (Marion County, Florida) judgment of conviction for lewd and lascivious molestation of a child under twelve years old (count one) and attempted lewd and lascivious molestation of a child under twelve years old (count two). Respondents have responded to the Petition. See Respondents' Response to Petition (Response) (Doc. #4) with exhibits (Resp. Ex.). Petitioner has replied. See Petitioner's Reply to Response (Reply) (Doc. #7). Thus, this case is ripe for review.[1]

_____

[1] Respondents set forth the state court procedural history and do not contest the timeliness of this action. See Response at 6-8. Thus, the Court will not repeat the procedural history.

## II. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

## III. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (AEDPA), this Court's review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007). "By its terms [28 U.S.C. ] § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only

2

to th[re]e exceptions." <u>Harrington v. Richter</u>, 131 S.Ct. 770, 784 (2011).

> Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision[2] "was contrary to" federal law then clearly established in the holdings of [the United States Supreme] Court, § 2254(d)(1); <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

<u>Id</u>. at 785.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' § 2254(e)(1)." <u>Schriro</u>, 550 U.S. at 473-74. "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

---

[2] In <u>Harrington</u>, 131 S.Ct. at 785, the Court "h[eld] and reconfirm[ed] that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"

## IV. Applicable Ineffectiveness Law

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel.  That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S.Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S.Ct. 2052.

_Harrington_, 131 S.Ct. at 787-88.  Since both prongs of the two-part _Strickland_ test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." _Ward v. Hall_, 592 F.3d 1144, 1163 (11th Cir.) (citation omitted), _cert_. _denied_, 131 S.Ct. 647 (2010).

"A [petitioner] can establish ineffective assistance of appellate counsel by showing: (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal." _Shere v. Sec'y, Dep't of Corr._, 537 F.3d 1304, 1310 (11th Cir. 2008) (citations omitted).

> The Supreme Court has held a criminal defendant's appellate counsel is not required to raise all nonfrivolous issues on appeal. _Jones v. Barnes_, 463 U.S. 745, 751-54, 103 S.Ct. 3308, 3312-14, 77 L.Ed.2d 987 (1983). In so holding, the Court noted, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." _Id_. at 751-52, 103 S.Ct. at 3313.  Therefore, it is difficult for a defendant to show his counsel was ineffective for failing to raise certain issues on appeal, particularly if counsel did present other strong issues. _Smith v. Robbins_, 528 U.S. 259, 287-88, 120 S.Ct. 746, 765-66, 145 L.Ed.2d 756 (2000).

_Payne v. United States_, 566 F.3d 1276, 1277 (11th Cir. 2009) (per curiam).

A state court's adjudication of an ineffectiveness claim is accorded great deference. "The standards created by _Strickland_ and

§ 2254(d) are both 'highly deferential,' [Strickland], at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, Knowles[3], 556 U.S., at ----, 129 S.Ct. at 1420." Harrington, 131 S.Ct. at 788.

## V. Findings of Fact and Conclusions of Law

### A. Grounds 1(a) and (b)

As grounds 1(a) and (b), Petitioner claims that the trial court abused its discretion by admitting Williams[4] rule evidence, thus violating his Fourteenth Amendment right to due process of law. Durkee raised this issue in his brief on direct appeal, see Resp. Ex. E at 10-18, and the State filed an Answer Brief, addressing the merits of the claim, see Resp. Ex. F at 10-14. The appellate court per curiam affirmed Durkee's conviction and sentence. Durkee v. State, 957 So.2d 1274 (Fla. 5th DCA 2007); Res. Ex. G. Respondents contend that Petitioner's claim is procedurally barred because the claim was not raised in the federal constitution sense on direct appeal. This Court agrees that the claim was raised only as an issue of state law and that no federal claim was presented on direct appeal.

---

[3] Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

[4] In Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847 (1959), the court held that evidence of another crime is admissible when relevant to prove a material issue, unless it is relevant only to show bad character or propensity.

6

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies.  See Castille v. Peoples, 489 U.S. 346, 349, reh'q denied, 490 U.S. 1076 (1989); Rose v. Lundy, 455 U.S. 509 (1982).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." Turner, 339 F.3d at 1281 (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999)). "This exhaustion doctrine 'is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts.'"  Turner, 339 F.3d at 1281 (quoting O'Sullivan, 526 U.S. at 845).

If a petitioner presents a federal claim in a federal habeas petition, he must have exhausted the same federal claim in state court rather than presenting the issue to the state courts in terms of trial court error or a violation of state law or procedure.

> To present a federal constitutional claim properly in state court, "the petitioner must make the state court aware that the claims asserted present federal constitutional issues." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998).  "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." Duncan v. Henry, 513 U.S. 364, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995); see also, Isaacs v. Head, 300 F.3d 1232, 1254 (11th Cir. 2002) (Seriatim Opinions) (Opinion of Anderson J.).  "It is not enough that all the facts necessary to

> support the federal claim were before the
> state courts, or that a somewhat similar
> state-law claim was made." <u>Anderson v.</u>
> <u>Harless</u>, 459 U.S. 4, 103 S.Ct. 276, 277, 74
> L.Ed.2d 3 (1982) (citations omitted). "[T]o
> exhaust state remedies, petitioners must do
> more than present 'the state courts only with
> the facts necessary to state a claim for
> relief' and must additionally articulate the
> constitutional theory serving as the basis for
> relief." <u>Henry v. Dept. of Corr.</u>, 197 F.3d
> 1361, 1366 (11th Cir. 1999) (quoting <u>Gray v.</u>
> <u>Netherland</u>, 518 U.S. 152, 116 S.Ct. 2074,
> 2081, 135 L.Ed.2d 457 (1996)).

<u>Zeigler v. Crosby</u>, 345 F.3d 1300, 1307 (11th Cir. 2003) (per

curiam), <u>cert</u>. <u>denied</u>, 543 U.S. 842 (2004); <u>see also</u> <u>Baldwin v.</u>

<u>Reese</u>, 541 U.S. 27, 32 (2004) (holding that "a state prisoner does

not 'fairly present' a claim to a state court if that court must

read beyond a petition or a brief (or a similar document) that does

not alert it to the presence of a federal claim in order to find

material, such as a lower court opinion in the case, that does

so.").

On direct appeal, Petitioner argued that the trial court

abused its discretion by admitting <u>Williams</u> rule evidence of

Petitioner's abusive conduct toward his biological daughter.

Petitioner did not argue that the alleged error deprived him of his

Fourteenth Amendment right to due process of law. Resp. Ex. E at

10-18.

It would be futile to dismiss this case to give Petitioner the

opportunity to exhaust his due process claim because it could have

and should have been raised on direct appeal. Accordingly, the

claim raised in grounds 1(a) and (b) has been procedurally defaulted.

"Procedural defaults in state courts will foreclose federal court review, absent a showing of cause and prejudice." Parker v. Sec'y for the Dep't of Corr., 331 F.3d 764, 770 (11th Cir. 2003) (citing Wainwright v. Sykes, 433 U.S. 72 (1977)), cert. denied, 540 U.S. 1222 (2004).  "[A] federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice." Fortenberry v. Haley, 297 F.3d 1213, 1222 (11th Cir. 2002) (per curiam) (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)), cert. denied, 538 U.S. 947 (2003).  The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), cert. denied, 535 U.S. 926 (2002).

Petitioner has not shown both cause excusing the default and actual prejudice resulting from the bar.  Furthermore, he has not shown that he is entitled to the fundamental miscarriage of justice exception.  Thus, the Court will not address Petitioner's procedurally barred due process claim that has been raised in grounds 1(a) and (b).

Petitioner's exhausted claim of trial court error presents an issue of state law that is not cognizable on federal habeas review.

The purpose of a federal habeas proceeding is review of the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States.  See Coleman v. Thompson, 501 U.S. 722, reh'q denied, 501 U.S. 1277 (1991).  "Federal habeas relief is unavailable 'for errors of state law.'"  Jamerson v. Secretary for Dept. of Corrections, 410 F.3d 682, 688 (11th Cir. 2005) (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)).

The federal habeas corpus court will be bound by the Florida court's interpretation of its own laws unless that interpretation breaches a federal constitutional mandate.  McCoy v. Newsome, 953 F.2d 1252, 1264 (11th Cir.) (per curiam), cert. denied, 504 U.S. 944 (1992).  As succinctly stated by the Eleventh Circuit:

> A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.  Bronstein v. Wainwright, 646 F.2d 1048, 1050 (5th Cir. Unit B June 1981).  State courts are the ultimate expositors of their own state's laws, and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a state's criminal statutes by the courts of the state except in extreme cases.  Mendiola v. Estelle, 635 F.2d 487, 489 (5th Cir. Unit A 1981).

McCullough v. Singletary, 967 F.2d 530, 535-36 (11th Cir. 1992), cert. denied, 507 U.S. 975, reh'q denied, 507 U.S. 1046 (1993).  Thus, Petitioner is not entitled to relief on the exhausted state law issue raised in grounds 1(a) and (b).

Finally, even assuming arguendo that the Fifth District Court of Appeal construed this issue in the federal constitutional sense, Petitioner is not entitled to relief. Upon thorough review of the record and the applicable law, this Court concludes that the Fifth District Court of Appeal's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on grounds 1(a) and (b).[5]

## B. Ground 1(c)

As ground 1(c), Petitioner claims that the trial court abused its discretion by imposing a twenty-five year sentence.[6]   Durkee

---

[5] This Court also finds this claim to be without merit for the reasons set forth by the State in its Answer Brief on direct appeal.  See Resp. Ex. F at 10-14.  The trial court did not abuse its discretion in admitting the Williams rule evidence pursuant to Florida Statutes section 90.404(2)(b).  See Durkee, 957 So.2d 1274 (citing McLean v. State, 934 So.2d 1248 (Fla. 2006)); see also Resp. Ex. C at 14, Notice of Intent to Offer Evidence of Other Crimes, Wrongs, or Acts; 17-49, Transcript of Williams Rule Hearing; 50-56, Order Admitting "Williams Rule" Evidence; Resp. Ex. B, Transcript of the Jury Trial (Tr.) at 185-86 (testimony of Tammy Ross, Petitioner's biological daughter); Tr. at 183-84, 199-200 (special instructions to the jury relating to Williams rule evidence).

[6] The court sentenced Durkee to a term of twenty-five years of incarceration for count one and a term of fifteen years of incarceration for count two, to run concurrently.  See Resp. Ex. C at 118.

raised this issue in his brief on direct appeal, <u>see</u> Resp. Ex. E at 19-20, and the State filed an Answer Brief, addressing the merits of the claim, <u>see</u> Resp. Ex. F at 15-16. The appellate court per curiam affirmed Durkee's conviction and sentence. <u>Durkee</u>, 957 So.2d 1274; Res. Ex. G. Respondents contend that Petitioner's claim presents an issue of purely state law, and this Court agrees. Thus, Petitioner is not entitled to relief on the exhausted state law issue raised in ground 1(c).[7]

### C. Ground Two

Petitioner claims that appellate counsel (Melanie S. Kohler) was ineffective because she failed to raise the following issue on direct appeal: the trial court improperly instructed the jury with respect to the elements of lewd and lascivious molestation. Petitioner raised this claim in a <u>pro se</u> habeas petition filed in the Fifth District Court of Appeal, <u>see</u> Resp. Ex. I; the State responded, <u>see</u> Resp. Ex. J, Petitioner replied, <u>see</u> Resp. Ex. K, and the parties filed supplemental responses, Resp. Exs. L; M. The appellate court denied the petition, <u>see</u> Resp. Ex. N, and also denied Petitioner's motion for rehearing, <u>see</u> Resp. Ex. O.

---

[7] This Court also finds this claim to be without merit for the reasons set forth by the State in its Answer Brief on direct appeal. <u>See</u> Resp. Ex. F at 15-16. The trial court did not err in sentencing Petitioner to a term of incarceration of twenty-five years on count one. <u>See</u> Resp. Ex. C at 107-20, Transcript of the Sentencing Hearing; 98-106, Judgment and Sentence.

The Fifth District Court of Appeal disposed of this claim on the merits; therefore, there is a qualifying decision under AEDPA. Upon thorough review of the record and the applicable law, this Court concludes that the Fifth District Court of Appeal's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Petitioner is not entitled to relief on this claim.[8]

### D. Ground 3(a)

Petitioner claims that counsel (Assistant Public Defender John Henry Tedder) was ineffective because he failed to object to the "remoteness of time" relating to the <u>Williams</u> Rule evidence. Petitioner raised this claim in his Rule 3.850 motion. Ultimately, the trial court denied the motion with respect to this issue, stating in pertinent part:

> The Defendant's "Williams Rule" issue pertains to the testimony of the Defendant's now adult daughter, Tammi Ross. A copy of the State's notice of its intent to use this type evidence is attached.[[9]] A "<u>Williams</u>" Rule" hearing was held by this Court on November 21,

---

[8] This Court also finds this claim to be without merit for the reasons set forth by the State in its responses to Durkee's state petition.  Resp. Exs. J; L.

[9] <u>See</u> Resp. Ex. C at 14, Notice of Intent to Offer Evidence of Other Crimes, Wrongs, or Acts.

2005. The transcript of that hearing as well as the copy of the November 29, 2005 order of this Court on the "Williams Rule" issue is attached to this order.[10] Additionally, the Court has attached copies from the trial transcript of both the preliminary Williams Rule jury instruction that was given by the Court as requested by defense counsel and the entire two pages of transcript of the Williams Rule witness (T, 183-189).[11] Trial counsel objected to the admissibility to this Williams Rule evidence as reflected by the attached transcript of that hearing, specifically, Pages 20-23 and, at trial, objected to the admissibility of this evidence (T, 185-186).

The pro se Defendant misinterprets the November 29, 2005 order of this Court. In that order, the Court, consistent with its obligations under §90.403, Fla. Stat., excluded some of the Williams Rule evidence but permitted some of the Williams Rule evidence of Tammi Ross over the objection and argument of defense counsel. This Court's November 29, 2005 order recognized that while some of the evidence the Court determined was inadmissible, since further discovery was anticipated, depending upon the additional information obtained, the Court could revisit its order, meaning that in the event that the further deposition testimony of the victims became more similar to the facts testified to by Tammi Ross, then more, not less, of the Williams Rule evidence from Ms. Ross could become admissible.

The transcript of the Williams Rule hearing clearly reflects that there were discussions by this Court as to the "remoteness of time" issue. Ultimately, this Court permitted some Williams Rule evidence at

_____

[10] See Resp. Ex. C at 17-49, Transcript of Williams Rule Hearing; 50-56, Order Admitting "Williams Rule" Evidence, filed November 29, 2005.

[11] See Tr. at 185-86 (testimony of Ms. Ross), 183-84, 199-200.

trial even though the events involving Tammi
Ross were some 20-25 years prior to the
criminal actions of the Defendant in the
instant case. As the 5th DCA clearly stated in
its opinion, this Court did not abuse its
discretion in permitting that testimony.[12]
The appellate court did not indicate that the
issue was not preserved for review by the
Defendant's counsel at trial. A Rule 3.850
proceeding is not to be used as a second
appeal. Harvey v. Dugger, 656 So.2d 1253
(Fla. 1995). Ground 1 of the Defendant's
motion is without merit.

Resp. Ex. Q at 4-5.

Petitioner appealed the denial of this claim, and the Fifth

District Court of Appeal affirmed, per curiam, without issuing a

written opinion. Durkee v. State, 10 So.3d 642 (Fla. 5th DCA

2009); Resp. Ex. U. Thus, there are qualifying decisions under

AEDPA from the state circuit and appellate courts. Upon a thorough

review of the record and the applicable law, this Court concludes

that the state courts' adjudications of this claim were not

contrary to clearly established federal law, did not involve an

unreasonable application of clearly established federal law, and

were not based on an unreasonable determination of the facts in

light of the evidence presented in the state court proceedings.

Thus, Petitioner is not entitled to relief on this claim.

### E. Ground 3(b)

Petitioner claims that counsel was ineffective because he

failed to convey a favorable plea offer made by the State and

---

[12] See Durkee, 957 So.2d 1274; Res. Ex. G.

failed to investigate available sentencing options. Petitioner raised this claim in his Rule 3.850 motion, and the trial court denied the motion with respect to this issue, stating in pertinent part:

> [Defendant] basically alleges that his trial counsel was ineffective for "failure to apprise, convey, and correctly advise or communicate previously negotiated plea offer, which would have been favorable in Defendant's sentencing." In his motion, [he] sets forth a record exchange regarding himself, the prosecutor, his defense counsel and this Court on Monday, April 17, 2006, which, contrary to the Defendant, clearly establishes that the Defendant is not entitled to the relief that he requests. The Court has also attached, to this order, a copy of the relevant pages of the transcript of the April 17, 2006 court proceeding.[13] . . .
>
> The original Information filed exposed the Defendant to up to 90 years in the Department of Corrections if convicted, as charged, and sentenced consecutively by this Court. The Amended Information, which dropped Count III (and to which Defendant pled not guilty), exposed the Defendant to a potential 60-year sentence in the Department of Corrections (T, 5).[14] On Page 7 of his motion, the Defendant quotes his attorney as advising him "That means, Mr. Durkee, that if you are convicted of both of these counts, Judge Lambert has the discretion to give you up to 60 years imprisonment" (T, 5). Almost immediately thereafter, the Court inquired of the State as to the State's offer. The prosecutor confirmed that the State was still offering the Defendant, to settle both counts in this case, 12 years in prison followed by 3

---

[13] See Tr. at 3-6.

[14] See Tr. at 5.

years probation (T, 5). At that time, the Defendant apparently had accumulated approximately 815 days jail credit (as reflected by the May 30, 2006 judgment and sentence in which Defendant was given 859 days jail credit).[15] The record establishes that Defendant was sitting in court and heard the State's offer. He also heard the earlier discussion in which the prosecutor was representing to defense counsel that if the Defendant was convicted, as charged, he faced a minimum mandatory sentence of 25 years in the Department of Corrections (T, 3). Despite the minimum mandatory sentence, the State was still offering the Defendant a negotiated plea of 12 years in prison. **The Defendant flatly rejected the State's offer stating "No. That's the rest of my life, either way" (T, 5).** Immediately after the Defendant's statement, his counsel indicated that "I've tried to counter-offer (the prosecutor). Since we had previously offered five to six, I had offered (prosecutor) perhaps nine years. But he indicates he is not interested in that" (T, 5). The Court inquired as to whether the State would accept the Defendant's counter-proposal of 9 years. The prosecutor's response was "No, sir. I don't want to give this man a downward departure" (T, 6).

The record firmly establishes that Mr. Durkee, through counsel, had previously offered to the State that he would agree to serve 5-6 years in prison to resolve these two counts. The record unequivocally establishes that the Defendant was present when it was communicated to him that the State was willing to offer him 12 years prison followed by 3 years probation to settle this case and that the State was absolutely not interested in his counsel's counter-offer of 9 years in the Department of Corrections. As stated above, Defendant specifically responded to the prosecutor that he was not interested in accepting the State's 12-year prison offer

---

[15] <u>See</u> Resp. Ex. C at 99.

because, apparently at his age (his date of birth is November 29, 1943 making him 62 years of age at the time), a 12-year prison sentence would be the "rest of my life" (T, 5). Defendant now complains that he was unaware of the offer, did not have time to accept the offer and, therefore, this Court should hold a hearing regarding the alleged ineffectiveness of counsel.

The Defendant makes reference in his motion to the record statement by his counsel "that's the first time I've said that, so, obviously, you and I have not talked about that." (See [paragraph] 16 on Page 9 of Defendant's motion.) What the Defendant is referring to is that the prosecutor advised his counsel, on April 17, 2006, that the State believed that if the Defendant was convicted, as charged, the Court would have no option but to impose a 25-year mandatory sentence. Defense counsel stated "Do you understand that, Mr. Durkee? That's the first time I've said that, so, obviously, you and I have not talked about that" (T, 3). Immediately after the statements, the State of Florida reiterated it was still making a 12-year prison offer to the Defendant to settle both cases. Defendant confirmed that he was not interested in the 12-year prison offer from the State (T, 5).

The Defendant's motion is meritless. Durkee does not dispute, in his motion, that his attorney made a 5 to 6-year offer to the State to resolve this case. He was also present when his counsel's in court 9-year counter-offer was rejected by the State. At that point, the Defendant had a choice to decide whether to accept or reject the 12-year plea offer from the State. The Defendant was obviously aware of the charges against him and what the State alleged he did to the two minor victims. The Defendant was also aware that, regardless of what he now believes to be the incorrectness of the 25-year minimum mandatory sentence he allegedly faced if convicted as charged (which, as an aside, became moot as

18

the Defendant was convicted of a lesser charge
as to Count II), he was exposed to a potential
60-year sentence again if convicted as
charged. Perhaps this Defendant, facing a
possible 60 years in prison if convicted as
charged, having offered a "5 to 6 years" plea
agreement to the State to resolve these
charges, having clearly heard that the State
was offering a 12-year prison sentence, having
heard the State reject his 9-year counter-
offer and being advised that he faced a
potential 25-year minimum mandatory if
convicted as charged, instead of dismissively
rejecting the State's 12-year offer due
apparently to the age and stage of his life
(i.e., "No. That's the rest of my life, either
way"), should have simply said on either April
17 or on Friday, April 21, 2006, when the
trial resumed, "I accept the State's offer and
Judge Lambert, will you accept our plea
agreement?"

   . . . The Court finds the record
definitively establishes that the Defendant
cannot establish the first prong or that he
was not correctly advised. Much like the
defendant in Valera,[16] the record does not
support the Defendant, Durkee's, contention
that this case involves a miscommunicated or
misunderstood plea offer. The unequivocal
record demonstrates that the Defendant
affirmatively rejected the State's 12-year
prison offer (parenthetically followed by 3
years of probation) ("No. that's the rest of
my life either way.") and apparently gambled
on either being acquitted of the charges or on
this Court being more lenient in its
sentencing. Just as Mr. Valera lost his
gamble, Valera at 1345, Durkee lost his gamble
and will not be allowed to complain. Id. See
also Abella v. State, 429 So.2d 774, 777 (Fla.
3d DCA 1983).

Resp. Ex. Q at 6-9 (emphasis added).

---

   [16] Varela v. State, 711 So.2d 1343 (Fla. 3rd DCA 1998).

Petitioner appealed the denial of this claim, and the Fifth District Court of Appeal affirmed, per curiam, without issuing a written opinion.  Durkee v. State, 10 So.3d 642 (Fla. 5th DCA 2009); Resp. Ex. U. Thus, there are qualifying decisions under AEDPA from the state circuit and appellate courts.  Upon a thorough review of the record and the applicable law, this Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on this claim.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The **Clerk of the Court** shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Petitioner appeals this Order, the Court denies a certificate of appealability.[17] Because this Court has determined

---

[17] This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484

that a certificate of appealability is not warranted, the **Clerk of the Court** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

    4.    The **Clerk of the Court** shall close this case.

    **DONE AND ORDERED** at Jacksonville, Florida this 31st day of July, 2012.



_____
TIMOTHY J. CORRIGAN
United States District Judge



sc 7/27
c:
Kenneth A. Durkee
Counsel of Record

------

(2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)). Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id</u>. Here, after consideration of the record as a whole, a certificate of appealability is not warranted.